# United States Court of Appeals for the Federal Circuit

2007-1487, 2008-1176

CLEARVALUE, INC.
and RICHARD ALAN HAASE,

Plaintiffs-Appellants,

and

GORDON WAGGETT,

Sanctioned Party-Appellant,

v.

PEARL RIVER POLYMERS, INC., POLYCHEMIE, INC.,
SNF, INC., POLYDYNE, INC., and SNF HOLDING COMPANY,

Defendants-Appellees.

Geoffrey P. Culbertson, Patton, Tidwell & Schroeder, L.L.P., of Texarkana, Texas, argued for plaintiff-appellants. With him on the brief were Nicholas H. Patton; and Patricia L. Peden, Law Offices of Patricia L. Peden, of Oakland, California.

Bradley W. Hoover, Nickens Keeton Lawless Farrell & Flack, LLP, of Houston, Texas, argued for sanctioned party-appellant. With him on the brief were Jack C. Nickens and Richard P. Keeton.

R. Russell Hollenbeck, Wright Brown & Close, LLP, of Houston, Texas, argued for defendants-appellees. With him on the brief were Howard L. Close and Thomas C. Wright. Of counsel on the brief was Andy Tindel, Provost Umphrey Law Firm, LLP, of Taylor, Texas.

Appealed from: United States District Court for the Eastern District of Texas

Judge Leonard Davis

# United States Court of Appeals for the Federal Circuit

2007-1487, 2008-1176

CLEARVALUE, INC.
and RICHARD ALAN HAASE,

Plaintiffs-Appellants,

and

GORDON WAGGETT,

Sanctioned Party-Appellant,

v.

PEARL RIVER POLYMERS, INC., POLYCHEMIE, INC.,
SNF, INC., POLYDYNE, INC., and SNF HOLDING COMPANY,

Defendants-Appellees.

Appeal from the United States District Court for the Eastern District of Texas
in case no. 6:06-CV-197, Judge Leonard Davis.

_____

DECIDED: March 24, 2009

_____

Before NEWMAN, SCHALL, and DYK, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> SCHALL. Opinion concurring-in-part, dissenting-in-part filed by <u>Circuit Judge</u> NEWMAN.

SCHALL, <u>Circuit Judge</u>.

ClearValue, Inc. ("ClearValue"), Richard Alan Haase ("Haase"), and attorney

Gordon Waggett ("Waggett") (together, "Appellants") appeal the December 21, 2007

amended final judgment of the United States District Court for the Eastern District of Texas, entering judgment against ClearValue and Haase and imposing sanctions on Appellants in connection with ClearValue and Haase's suit against Pearl River Polymers, Inc. ("Pearl River"); Polychemie, Inc.; SNF, Inc.; Polydyne, Inc.; and SNF Holding Company (together, "Appellees"), for infringement of U.S. Patent No. 6,120,690 (the "'690 patent") and for misappropriation of trade secrets. ClearValue, Inc. v. Pearl River Polymers, Inc., No. 6:06-CV-197 (E.D. Tex. Dec. 21, 2007). The district court:

1. Struck ClearValue's and Haase's pleadings, under Fed. R. Civ. P. 37 and the court's inherent powers, and entered judgment for Appellees on ClearValue's and Haase's claims and Appellees' counterclaims. Among other things, this action resulted in the '690 patent being rendered invalid.

2. Awarded Appellees recovery of attorney's fees, costs, and expenses incurred between November 29, 2005, and June 28, 2007 as follows:

   a. $121,107.38 in attorney's fees, under Fed. R. Civ. P. 26 and 37, against Appellants jointly and severally;

   b. $306,863.87 in attorney's fees and $613,410.74 in costs and expenses, under the court's inherent powers, against Appellants jointly and severally;

   c. $1,628,039.05 in attorney's fees, under 35 U.S.C. § 285, against Appellants jointly and severally; and

   d. $47,677.30 as costs, under 28 U.S.C. § 1920, against Appellants jointly and severally.

The district court thus imposed monetary sanctions in the total amount of $2,717,098.34. The amended final judgment followed the court's Memorandum Opinion and Order of June 28, 2007 in which the court found that Appellants had engaged in

sanctionable conduct. ClearValue, Inc. v. Pearl River Polymers, Inc., 242 F.R.D. 362 (E.D. Tex. 2007) ("Sanctions Decision").

For the reasons set forth below, we

1. Affirm the finding of sanctionable conduct;

2. Affirm the award of $121,107.38 in attorney's fees under Rules 26 and 37 as to ClearValue and Haase, but reverse as to Waggett;

3. Reverse the order under Rule 37 and the court's inherent powers (1) striking ClearValue and Haase's pleadings and (2) entering judgment in favor of Appellees on ClearValue and Haase's claims and Appellees' counterclaims;

4. Reverse the award of attorney's fees, costs, and expenses under the court's inherent powers;

5. Reverse the award of attorney's fees under 35 U.S.C. § 285; and

6. Reverse the award of costs under 28 U.S.C. § 1920.

We thus affirm-in-part and reverse-in-part the amended final judgment. The case is remanded to the district court for further proceedings consistent with this opinion.

BACKGROUND

I.

Haase is the founder and chief executive officer of ClearValue, as well as the sole inventor named in the '690 patent. Haase granted an exclusive license of the patent to ClearValue. Sanctions Decision, 242 F.R.D. at 365. ClearValue is in the business of assisting in the clarification of water and wastewater; its primary customers are municipal water treatment facilities. In its business, ClearValue uses the technology claimed in the '690 patent.

The '690 patent relates to "a process for clarifying waters and wastewaters by using aluminum salts and/or aluminum polymers and newly formulated high molecular weight quaternized polymers." Claim 1 of the '690 patent is a representative claim:

> 1.  A process for clarification of water of raw alkalinity less than or equal to 50 ppm by chemical treatment, said process comprising:
>
> adding to the water and, prior to or after adding to the water, blending at least one aluminum polymer with a high molecular weight quaternized ammonium polymer in an amount sufficient to form a flocculated suspension in the water and to remove turbidity from the water, said high molecular weight quaternized ammonium polymer comprising at least an effective amount of
>
> high molecular weight di-allyl di-methyl ammonium chloride (DADMAC) <u>having a molecular weight of at least approximately 1,000,000</u> to approximately 3,000,000 and
>
> said aluminum polymer including at least an effective amount of poly-aluminum hydroxychloride of a basicity equal to or greater than 50%.

'690 patent col.16 ll.15–34 (emphasis added). The patent teaches that the mixture of the aluminum polymer and the high molecular weight quaternized ammonium polymer causes impurities to form solid "flocs," which are then easily removed from the water. Id. at col.3 l.59–col.4 l.8; id. at col.4 ll.36–64. The Abstract and the Summary of the Invention indicate that the quaternized polymers used are "newly formulated," and they set forth the polymers' defining characteristics, namely, a molecular weight of greater than approximately 1,000,000 and a viscosity greater than about 1,000 centipose (cps) at a concentration of approximately 20% in water. Id. at col.3 ll.1–11.

II.

Pearl River is a manufacturer of chemicals, including polymers used to treat wastewater. From 1995 until 2002, Pearl River and ClearValue had a business relationship in which ClearValue purchased Pearl River's DADMACs for use in its wastewater facilities. In late 2002, relations broke down when Pearl River stopped supplying ClearValue and sued for non-payment of its account. Haase hired Waggett to represent ClearValue in that suit.[1]

On January 4, 2005, ClearValue and Haase sued Appellees[2] for both direct and indirect patent infringement, misappropriation of trade secrets, breach of confidentiality, and unfair competition.[3] Waggett helped Haase assemble a litigation team for the suit, and also participated as a member of that team. In their infringement claims, ClearValue and Haase alleged that Pearl River's 4820 DADMAC product was a high molecular weight polymer, which infringed the '690 patent when used by treatment facilities in the clarification process. Appellees subsequently counterclaimed, seeking a declaratory judgment of non-infringement and patent invalidity by reason of anticipation and obviousness. In their answer to these counterclaims, ClearValue and Haase reasserted infringement and denied invalidity. In August of 2006, ClearValue and

---

[1]     Pearl River obtained a judgment of $18,886.40 (the principal balance due on the account), plus 5% interest and $4,500 in attorney's fees. Pearl River Polymers, Inc. v. ClearValue, Inc., Civ. No. 21,893 (Fort Bend County Ct., Tex. May 6, 2004), available at http://tylerpaw.co.fort-bend.tx.us/CaseDetail.aspx?CaseID=90818.

[2]     SNF Holding Company is the 100% owner of Pearl River and the three other Appellees, Polychemie, Inc.; SNF, Inc.; and Polydyne, Inc.

[3]     ClearValue dropped its unfair competition claim on the second day of trial. Sanctions Decision, 242 F.R.D. at 367 n.2. We refer to ClearValue's and Haase's misappropriation of trade secrets and breach of confidentiality claims collectively as their "trade secret" claims.

Haase amended their pleadings, and added a count of infringement with respect to Pearl River's 4620 DADMAC product. Also in August of 2006, ClearValue and Haase's first litigation team withdrew, leaving Waggett as the only attorney continuing throughout the entirety of the suit. Waggett thereupon helped ClearValue and Haase in assembling a second litigation team.

III.

Early in the litigation, it became clear that a critical issue in the case was whether Pearl River's DADMACs had molecular weights over one million and thus fell within the scope of the claims of the '690 patent. The focus on "molecular weight" began at the claim construction stage of the litigation. While Appellees wanted to define "molecular weight" as "the sum of the atomic weights of all the atoms in a molecule," ClearValue and Haase wanted to define the term more narrowly, claiming that those in the industry normally calculate molecular weight by measuring a viscosity value and then using a known correlation to achieve the final molecular weight value. ClearValue and Haase asked Jim Stoll ("Stoll"), a retired employee of Callaway Chemicals, to give opinions on claim construction.[4] Stoll was officially designated as an expert on September 30, 2005. On July 17, 2006, the court issued its <u>Markman</u> ruling, construing "molecular weight" to mean "the sum of the atomic weights of all the atoms in a molecule as measured by viscosity, osmotic pressure, light scattering, gel permeation, chromatography, ultracentrifugation, and/or similar accepted methods." <u>ClearValue,</u>

---

[4] Stoll had worked for several chemical companies, training salespeople in various chemical technologies, including hazardous waste technology. Stoll continued to work as a consultant for various companies after his retirement.

<u>Inc. v. Pearl River Polymers, Inc.</u>, No. 6:06-CV-197, slip op. at 11 (E.D. Tex. July 17, 2006).

As far as infringement was concerned, the parties disputed the molecular weights of the 4620 and 4820 DADMACs. The district court's April 6, 2005 discovery order instructed the parties to provide "all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert testimony." The discovery order also called for the parties to exchange privilege logs documenting any withheld items. In discovery, Pearl River produced internal operating documents from 2005 and a marketing fax sent to ClearValue in 1998. These materials indicated that Pearl River's products were over the required one-million-molecular-weight threshold. However, Pearl River also provided test results obtained in 2001, 2006, and 2007 (the "Jordi reports"), which indicated that the molecular weights of its products were under one million and therefore did not infringe the '690 patent.

For their part, in interrogatories and document production requests, Appellees requested that ClearValue and Haase provide the results of any molecular weight testing, which they had conducted on Pearl River's 4620 and 4820 DADMAC products. In the alternative, Appellees asked that ClearValue and Haase specify the Bates number[5] for any relevant testing in the event they already had produced testing results. ClearValue and Haase responded that the request was "overly burdensome, repetitive and cumulative . . . and impos[ed] obligations not required by the Federal Rules of Procedure." Further, ClearValue and Haase indicated that "[t]o the extent that request

_____
[5] Bates numbering is an identification system for documents produced in discovery.

seeks information made in anticipation of or preparation for trial, Plaintiffs object to the request as seeking work product or trial preparation materials that are not discoverable under the Federal Rules of Procedure." ClearValue and Haase did not list any test results on a privilege log, however.

Before trial commenced, ClearValue and Haase indentified Stoll as an expert who would testify regarding infringement. Stoll was officially designated as an expert for purposes of infringement on August 25, 2006, but Appellees chose not to depose him for a second time.[6]

IV.

Trial before a jury began on March 27, 2007. On the second day of trial, Haase testified for the plaintiffs regarding the infringement claim. During his testimony, he stated he "believed a person on [the litigation] team" had conducted an independent test on molecular weight. Trial Tr. at 52, Mar. 27, 2007. He also stated that he had seen the results, but that he was not involved with the testing and did not know when the testing was conducted. Id. at 53. Haase said he did not want to reveal any other information about the tests, as he believed it was privileged. Id. After some further questioning, the court sustained ClearValue's and Haase's assertion of attorney-client privilege with respect to the testing. Id. at 55–57.

Stoll also testified for the plaintiffs. On cross examination he was asked if he had reviewed any results of tests of Pearl River's accused products other than the results in the Jordi reports. ClearValue and Haase objected, stating that any additional test results were protected as attorney work product under Fed. R. Civ. P. 26(b)(3). Trial Tr.

---

[6] Appellees had deposed Stoll previously in connection with claim construction.

at 180, March 28, 2007. Outside the presence of the jury, the court questioned Stoll and found the work product privilege waived because Stoll, as a testifying expert, had reviewed the additional test results. Further questioning revealed that Stoll had reviewed the results of two different sets of tests: the "Lark" test and the "Texas Oil" test. Both tests were conducted on samples of a Pearl River accused product obtained from one of ClearValue's suppliers, Moon Chemical. The Lark test measured molecular weight, revealing that the samples had a molecular weight of 439,187, substantially below the one million limitation in the '690 patent. The Texas Oil test included measurements of the viscosity of the samples. It revealed the samples' viscosity to be 585 cps at a concentration of 22.5% in water (corresponding to a value under 500 cps at 20% in water). The test thus indicated a variance from the value listed in the Abstract and Summary of the '690 patent.

Stoll offered an explanation for the failure to provide the test results to Appellees. He stated that Haase approached him and asked him to measure the molecular weights of two unmarked samples. According to Stoll, Haase indicated that he was having trouble with a water treatment plant in Arkansas and wanted to test the samples to determine if the additive being used at the plant had a molecular weight which was below the required level, thus causing the plant to malfunction. Stoll testified that the test results proved the samples had a molecular weight and viscosity that was too low to be one of the accused products. Therefore, Stoll stated, the litigation team ignored the test results, believing them "irrelevant."

Haase then took the stand and gave testimony similar to Stoll's. Haase testified that he only shared the test results with Stoll; he said he did not share them with his

litigation team because the results were irrelevant to the case. At that point, the court ordered Haase to produce the test results to Appellees by 8:00 p.m. that evening. Further, the court informed the parties it would consider "any motion for sanctions" the following morning.

The court proceeded to have an all-day sanctions hearing on March 29, 2007. At the hearing, Appellees stated that, in document production requests and interrogatories, they had sought from ClearValue and Haase any results of testing of Pearl River's accused products in their possession, but that the plaintiffs had not turned over the reports, or listed them on a privilege log. Stoll testified again, saying he honestly believed the test results were "irrelevant," and that he did not even think about how the results could impact Appellees' defense. Appellees also had Stoll explain a series of emails between Haase, Stoll, and Waggett about the test results. In the first email, from Haase to Stoll, Haase wrote that he and Waggett wanted Stoll to conduct various tests on the Moon Chemical samples, including tests for viscosity and molecular weight. Waggett was copied on the email. Responding, Stoll sent back informational materials about Lark's testing capabilities. Subsequently, in an email dated November 28, 2005, Stoll sent the Lark molecular weight calculations to Haase. In the email, Stoll stated he and Haase could talk about the results the next day in counsel's office. Haase forwarded the Lark calculations to Waggett on December 1, 2005, indicating that although "Peal River plays with the manufacturing to obtain some type of average MW [molecular weight] of less than 1 M [million], there are still significant components which are over 1 M." In the final email, Waggett told Haase that plaintiffs needed independent confirmation of viscosity. He also instructed Haase to stop copying Stoll to "best

preserve priv/work product." At that point, Stoll conducted the Texas Oil test to measure the viscosity of the two samples.

Waggett then took the stand, testifying that he had "a total disconnect" with respect to the testing and that he "was sorry" for not producing the test results in discovery because he now appreciated he was "obviously wrong" and that the results were "not work product." Waggett said he was "rusty" and had "been out of the litigation loop" for almost nine years. Waggett also testified to Haase's extensive involvement in the trial.

At the end of the day, the district court stated that it was confronted with "an extremely troubling matter," as the test results were withheld for over a year and a half. The court further stated that only the "ultimate sanction" was appropriate, and that therefore it was striking ClearValue and Haase's pleadings and entering judgment for Appellees. The court indicated in addition that it would award attorney's fees, and it asked Appellees to provide affidavits and evidence supporting those fees within fifteen days. The court then discharged the jury.

V.

In due course, Appellees submitted their fees and costs. Thereafter, on June 28, 2007, the district court issued its formal sanctions decision. The court indicated that severe sanctions were warranted because the discovery violation continued for over a year and a half before it was discovered, and because the withheld test results were "relevant to a critical issue in [the] case." The court began with an analysis of the factors that the Fifth Circuit uses "in determining whether a party's failure to comply with a valid discovery order merits severe sanctions." Sanctions Decision, 242 F.R.D. at

374. Those factors are set forth in <u>Batson v. Neal Spelce Associates, Inc.</u>, 765 F.2d 511, 514 (5th Cir. 1985) (internal citations and quotation marks omitted):

> First, dismissal is authorized only when the failure to comply with the court's order results from wilfulness [sic] or bad faith, and not from the inability to comply. Next, dismissal is proper only in situations where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party's preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders.

In order to determine ClearValue and Haase's willfulness or bad faith, the district court first considered the duty of ClearValue, Haase, and Waggett to produce the test results. <u>Sanctions Decision</u>, 242 F.R.D. at 375–76. Noting that its claim construction required ClearValue to show that the accused products had the molecular weight and viscosity profile set forth in the '690 patent, the court concluded that the Lark and Texas Oil test results were extremely pertinent to ClearValue's infringement claims. Further, the court concluded that the results were relevant to ClearValue's trade secret claims because the secrets asserted primarily dealt with "creating stable blends of <u>high molecular weight</u> DADMACs." <u>Id.</u> at 376. Thus, the court found the test results highly material to the case as a whole. Finally, the court found that the test results were "considered" by a testifying expert, destroying the work product privilege and requiring disclosure under Fed. R. Civ. P. 26(a)(2)(ii) and the discovery order. <u>Id.</u> at 378.

The district court then evaluated Haase's proffered explanations for the failure to disclose the Lark and Texas Oil testing, finding his reasoning faulty and not credible. In the court's view, Haase had offered no documentary evidence, either at or subsequent

to the sanctions hearing, supporting his contention that the testing was conducted to evaluate performance at a customer site. Id. at 376–77. In addition, the court noted that the documents that were produced for the sanctions hearing, including the emails between Haase, Stoll, and Waggett, contained discussion about whether the molecular weight reflected in the Lark test was consistent with the molecular-weight limitation in the '690 patent. The court therefore found that Waggett and Haase could not have believed in good faith that the reports were irrelevant—their own emails indicated the results were highly material to the case.

The court also found Waggett's testimony contradictory and inconsistent. Although Waggett testified he understood that the work product privilege protects documents prepared in connection with litigation, he also testified he believed the tests were conducted with respect to a non-litigation business matter. Sanctions Decision, 242 F.R.D. at 377–78. Further, as seen, Waggett sent an email to Haase instructing that Stoll should not be copied on the emails in order to maintain them as work product. The conclusion the court drew from this email was that Waggett understood the nature of the work product privilege doctrine but chose to willfully conceal the Lark and Texas Oil test results.

As a result of these findings, the district court concluded that the failure to produce the Lark and Texas Oil test results was "an ongoing act of willful concealment," sanctionable under Fed. R. Civ. P. 26 and 37 and the court's inherent powers. Sanctions Decision, 242 F.R.D. at 379. The court noted that the failure to produce the test results was "not a one-time mistake or oversight," but rather an ongoing violation, which continued for more than eighteen months. Id. The court concluded that the

record supported a finding that Haase knew the importance of the test results and engaged in willful and bad faith concealment of the results, warranting severe sanctions. In addition, according to the court, the emails between Haase, Stoll, and Waggett indicated that Haase spoke to Waggett extensively. Id. at 369–70, 376, 378. Yet, Haase testified he did not review the results with anyone on the litigation team. The court determined that Haase's course of conduct, and his lack of credibility, led to the logical conclusion that the decision to withhold the test results was willful and in bad faith. Id. at 379–80.

The court found sanctions against Waggett appropriate because, although he was not lead counsel, he assisted at every stage of the litigation. Waggett helped Haase hire two litigation teams, was the only attorney who represented ClearValue and Haase throughout the entirety of the litigation, and was "responsible for many of the patent-related motions" filed in the lawsuit. Sanctions Decision, 242 F.R.D. at 368. Furthermore, based on the email record, the court concluded that Waggett played an active role in coordinating the Lark and Texas Oil testing, but at the same time failed to disclose the results of the tests as he was obligated to do under Rule 26 and the discovery order. Id. at 377–78. According to the court, Waggett was the only attorney who saw the results of the testing. Therefore, he was the only attorney who could have prepared a privilege log and made the decision to withhold the test results from Appellees. Id. at 378.

As to the second Batson factor, the district court found that lesser sanctions were not warranted and would not achieve the same deterrent value. The court noted that Haase and Waggett chose to conceal the test results in bad faith, while at the same

time availing themselves of the court's "rigorously enforced discovery rules" and receiving helpful documentation from Appellees. Sanctions Decision, 242 F.R.D. at 382. The court emphasized that lesser sanctions would not remedy the prejudice experienced by Appellees, because they would not compensate Appellees for the year and a half extension of the lawsuit or the additional money expended in defending against ClearValue and Haase's claims. Id. at 382–83. The court determined that even ordering a new trial and fees for the old trial would not be adequate, as Appellees would then accrue costs and fees for continuing litigation.

Addressing the third Batson factor, the district court found that Appellees were severely prejudiced by the concealment of the test results. Namely, the court noted that, had Appellees received the test results, they would have gained significant leverage in settlement negotiations, as the results "were relevant to a central and vehemently-contested issue in the case" and supported Pearl River's contention that use of its products did not infringe the '690 patent. Sanctions Decision, 242 F.R.D. at 380–81.

Finally, the court found that the failure to comply with discovery requirements was not plainly attributable to Waggett. Id. at 382. The court noted that Haase was extremely involved in prosecuting the case, in directing all litigation for ClearValue, in gathering material for production in discovery, and in drafting responses to summary judgment motions. Id. at 379–80. Further, Haase testified in connection with both the claim construction and infringement portions of the litigation. Finally, Haase misrepresented Waggett's involvement in the testing, which indicated to the court that

Haase played an active role in the concealment of the Lark and Texas Oil test results and the discovery violation. Id. at 382.

The district court determined that the four-factor Batson test counseled toward the imposition of the severest sanctions—striking ClearValue and Haase's pleadings, entering judgment for Appellees, and awarding Appellees attorney's fees and costs. Sanctions Decision, 242 F.R.D. at 384. On August 10, 2007, in its Addendum Opinion and Order, the court sua sponte issued an order ruling that the case was exceptional under 35 U.S.C. § 285, for the reasons set out in the Sanctions Decision. ClearValue, Inc. v. Pearl River Polymers, Inc., No. 6:06-CV-197 (E.D. Tex. Aug. 10, 2007). The court then requested that Appellees resubmit their fees and costs with greater specificity, so that the court could apportion the monetary award under, (1) Fed. R. Civ. P. 26 and 37; (2) 35 U.S.C. § 285; (3) the court's inherent powers; and (4) 28 U.S.C. § 1920. On November 29, 2007, the court entered final judgment awarding Appellees recovery of attorney's fees, costs, and expenses incurred between November 29, 2005, and June 28, 2007,[7] apportioned as follows:

1. $121,107.38 in attorney's fees under Fed. R. Civ. P. 26 and 37, against Appellants jointly and severally.

2. $306,863.87 in attorney's fees and $613,410.74 in costs and expenses, under the court's inherent powers, against Appellants jointly and severally.

3. $1,628,039.05 in attorney's fees under 35 U.S.C. § 285, against Appellants jointly and severally.

---

[7] These dates were chosen because, in the district court's estimation, they represented the beginning and end of the sanctionable conduct. November 28, 2005 was the day Stoll emailed Haase and Waggett the Lark test results. The district court found that ClearValue and Waggett had a duty to disclose these results the following day. June 28, 2007 was the date of issuance of the Sanctions Decision.

4. $47,677.30 as costs under 28 U.S.C. § 1920, against Appellants jointly and severally.

ClearValue, Inc. v. Pearl River Polymers, Inc., No. 6:06-CV-197 (E.D. Tex. Nov. 29, 2007). This resulted in monetary sanctions against Appellants in the amount of $2,717,098.34. Finally, on December 21, 2007, the court issued an amended final judgment, in which it stated that, in addition to the monetary sanctions noted above, it was entering judgment for Appellees on ClearValue and Haase's claims and Appellees' counterclaims, including the counterclaims of patent invalidity.

## DISCUSSION

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1). On appeal, ClearValue, Haase, and Waggett challenge the ruling of the district court that they engaged in sanctionable conduct. Beyond that, they argue that, assuming there was sanctionable conduct in this case, the district court abused its discretion in imposing the sanctions it did. Individually, Waggett argues that the district court abused its discretion in holding him jointly and severally liable for the monetary sanctions that were imposed. We address the Appellants' contentions seriatim. We begin with their attack on the district court's imposition of sanctions under Fed. R. Civ. P. 37.[8]

### I.

Among other things, Rule 26 imposes on parties an affirmative obligation to disclose in discovery information "considered by testifying experts." In relevant part, the rule governs the disclosure of expert testimony and provides as follows:

---

[8]    The court stated that it was imposing sanctions under Rules 26 and 37. Rule 26(g)(3) provides for monetary sanctions or another "appropriate sanction." Rule 37 provides a list of monetary and non-monetary sanctions; these were cited by the district court in support of the sanctions imposed. Thus, we view the district court as having acted in this case under Rule 37.

(B) Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.

The report must contain:
(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the data or other information considered by the witness in forming them . . . .

Fed. R. Civ. P. 26(a)(2)(B). Additionally, Rule 26 provides for broad pre-discovery disclosure of all "documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Id. 26(a)(1)(A)(ii). In this case, the district court broadened this requirement somewhat in its discovery order, which instructed the parties to provide copies of "documents, data compilations, and tangible things in the possession, custody, or control of the party that are relevant to those . . . pleaded claims or defenses involved in this action."

Rule 26 specifically exempts privileged information and work product from disclosure. Fed. R. Civ. P. 26(b)(1), (3), (4). However, a party must:

(i) expressly make the claim [of privilege or work product]; and

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Id. 26(b)(5)(A).

Rule 37 provides authority for a court to impose sanctions "if a party fails to make a disclosure required by Rule 26(a)." Fed. R. Civ. P. 37(a)(3)(A). As discussed above,

the district court found that ClearValue, Haase, and Waggett had violated the discovery order and Rule 26(a). It therefore imposed sanctions under Rule 37.

On appeal, ClearValue, Haase, and Waggett contend that the decision to withhold the Lark and Texas Oil test results was not sanctionable because the results were not considered by Stoll in forming his opinions, and therefore neither Rule 26 nor the discovery order compelled the disclosure of the testing.

Appellants note that, at the time of the Lark and Texas Oil tests, Stoll had not been designated as an expert for purposes of infringement liability. Rather, the intention was to have Stoll testify solely on claim construction. Appellants suggest that Stoll had "two distinct roles." The first was "provid[ing] technical expertise to advance ClearValue's proposed claim constructions in the <u>Markman</u> proceedings," while the second was "coordinating . . . tests of the suspect material." Appellants' Br., ClearValue and Haase, 20. Continuing, Appellants argue that Haase and Stoll reasonably believed that the sample received from Moon Chemical was not an accused product, but rather an "off spec" product causing problems at the Arkansas plant. Appellants further contend that Haase and Stoll "knew" that Pearl River's 4620 product had a molecular weight of 1.4 million and a viscosity of 700–1000 cps, while the 4820 product had a molecular weight of 1.8 million and a viscosity of 1000–3000 cps. Therefore, they completely disregarded the results of the Lark and Texas Oil tests. <u>Id.</u> at 21.

Appellants concede that "documents and information disclosed to a testifying expert in connection with his testimony are discoverable by the opposing party, whether or not the expert relies on the documents and information in preparing his report." <u>In re Pioneer Hi-Bred Int'l, Inc.</u>, 238 F.3d 1370, 1375 (Fed. Cir. 2001). They state, however,

that Stoll "forgot" about the Lark and Texas Oil tests and "did not plan to take any action in light of them" because he found the test results "worthless." Essentially, Appellants argue that Stoll could not have considered the results because (1) the tests had no relevance to claim construction, and (2) Stoll forgot about the tests before giving his liability opinion.

Appellants then reason that because the Lark and Texas Oil test results were not "considered" by Stoll, they must have been privileged and properly withheld. Appellants argue that it is immaterial that ClearValue and Haase did not list the document on a privilege log because "Pearl River was aware well before trial that some testing was withheld based on privilege, but chose not to pursue discovery of those documents." Appellants' Br., ClearValue and Haase, 30.

Appellees respond that the district court simply did not believe the explanations offered by Haase, Stoll, and Waggett about why the Lark and Texas Oil tests were ordered, why the results of the tests were not produced or documented on a privilege log, and why ClearValue asserted the work product doctrine and attorney-client privilege. Appellees indicate there were numerous reasons for failing to credit Haase, Stoll, and Waggett's explanations. Appellees point out that there were no emails referring to a customer problem; that Stoll tested a third-party sample, rather than a sample from the allegedly malfunctioning plant; that Stoll conducted four tests as opposed to stopping after the first molecular weight test (which supported the "off spec" hypothesis); and that Waggett was involved with the testing, even though Haase stated it was conducted for a commercial purpose.

In the absence of a viable explanation to the contrary, Appellees argue, a court could properly find that the Lark and Texas Oil tests were commissioned for the purpose of proving patent infringement; that Stoll considered, then disregarded, the results of the tests; and that the decision to subsequently withhold the results was sanctionable discovery abuse. Therefore, Appellees conclude the district court properly found a violation of Rule 26(a)(2) and the discovery order. We agree.

"A decision to sanction a litigant pursuant to Fed. R. Civ. P. 37 is one that is not unique to patent law . . . and we therefore apply regional circuit law to that issue . . . ." Transclean Corp. v. Bridgewater Servs., Inc., 290 F.3d 1364, 1370 (Fed. Cir. 2002) (internal citations omitted). The Fifth Circuit reviews an imposition of sanctions for an abuse of discretion. Lamar Fin. Corp. v. Adams, 918 F.2d 564, 567 (5th Cir. 1990); Bonaventure v. Butler, 593 F.2d 625, 626 (5th Cir. 1979). A district court abuses its discretion when the "ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Mercury Air Group, Inc. v. Mansour, 237 F.3d 542, 548 (5th Cir. 2001) (internal quotation marks omitted). In this case, we see no error in the district court's finding of sanctionable conduct.

The district court did not err in finding that ClearValue, Haase, and Waggett failed to make a disclosure required by Rule 26(a); they withheld test results reviewed by a testifying expert. See In re Pioneer Hi-Bred, 238 F.3d at 1370 ("Litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.") (internal quotation marks omitted). Although Appellants offered a

justification for the failure to disclose, namely, that the Lark and Texas Oil tests were conducted to address a customer issue, the district court evaluated the credibility of Haase, Stoll, and Waggett and found their explanations implausible. As we have stated, "this court gives great deference to the district court's decisions regarding credibility of witnesses." Medichem, S.A. v. Rolabo, S.L., 437 F.3d 1157, 1171 (Fed. Cir. 2006) (internal quotation marks omitted). We find no error in the district court's fact finding that Haase, Stoll, and Waggett failed to offer a substantial justification for their conduct. Based on the emails exchanged between them, the lack of evidence regarding the alleged customer problem, Haase's conflicting testimony (he first claimed he did not share the information with any of his attorneys), and the potentially damaging nature of the material involved, there is more than ample support for the finding that the Appellants engaged in unjustified and sanctionable conduct.

Additionally, the district court did not err in finding that the failure to disclose was not "harmless." The molecular weight limitation was, as acknowledged by both sides, a key point of contention during the litigation. The parties were free to debate the accuracy or value of the evidence at trial, but the results were relevant to the litigation. Although we can only speculate as to the potential use of the test results at trial, or the impact the evidence might have had on the course of the litigation, we hold that the district court did not err in its conclusion that this was not a harmless non-disclosure. Thus, we affirm the district court's finding of sanctionable conduct.

II.

A.

We turn now to the actual sanctions imposed. In that regard, Fed. R. Civ. P. 37(c)(1) provides that, as sanctions, a district court,

> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure [to provide information as required by Rule 26];
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Among the "orders listed in Rule 37(b)(2)(A)(i)-(vi)" are orders "striking pleadings in whole or in part" and "dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(iii), (v). We first address the district court's award of attorney's fees under Rule 37.

Appellants offer no concrete reason for overturning the court's award of $121,107.38 in attorney's fees under Rule 37, and we find no abuse of discretion in this award as to ClearValue and Haase. While ClearValue and Haase attack the entire award of $2,717,098.34, as well as the specific awards under the court's inherent powers, 35 U.S.C. § 285, and 28 U.S.C. § 1920, they do not advance any arguments for attacking the amount of the award under Rule 37. The only mention of this issue in the briefs is a footnote indicating that "[n]one of the amounts awarded is sufficiently supported to enable a reasonableness determination." Appellants' Br., ClearValue and Haase, 53 n.22. Indeed, at oral argument counsel for ClearValue and Haase conceded that his clients were not contesting this award "other than the way [Pearl River]

supported it." Oral Arg. at 5:00–5:21, <u>available at</u> http://oralarguments.cafc.uscourts.gov/mp3/2007-1487.mp3.

In any event, although Appellees' affidavits and fee statements provide less information than we might prefer, we cannot say there was an abuse of discretion in the fee award. Appellees submitted affidavits as to the reasonableness of the attorney's fees they incurred. In addition, they provided a monthly breakdown of fees by attorney and claim. Although this relatively undetailed method falls on the lower end of the spectrum as to acceptable documentation, the Fifth Circuit has sustained awards with similarly sparse support. In <u>Wegner v. Standard Insurance Co.</u>, 129 F.3d 814, 822 (5th Cir. 1997), the attorneys provided a six-line spreadsheet, indicating only the hours, rate, and fees incurred by each attorney. No description of individual tasks was provided, and the district court explained the award with a conclusory sentence: "After considering the number of hours expended on this case by [the] attorneys, the court finds that the claimed hours are reasonable." <u>Id.</u> The Fifth Circuit affirmed the award, finding that, "[a]lthough Wegner's documentation was sparse, we cannot say that it was so vague or incomplete that the district court was precluded from conducting a meaningful review of whether the hours claimed on this litigation were reasonably expended." <u>Id.</u> In light of this precedent, we conclude that the district court had enough documentation to conduct a "meaningful review," and that the award of $121,207.38 was properly supported. Therefore, we affirm that award as to ClearValue and Haase.

B.

As to the court's imposition of joint and several liability on Waggett for the $121,207.38 under Rule 37(c)(1)(A), we agree with Waggett that the court abused its

discretion by failing to consider that Waggett does not have the ability to pay when fashioning the sanction against him. Thus, we reverse the imposition of liability as to him personally. We note that the Fifth Circuit "has consistently held that a district court, when considering the imposition of sanctions for discovery violations . . . should impose the least severe sanction that will accomplish the desired result." United States v. Garrett, 238 F.3d 293, 298 (5th Cir. 2000) (internal quotation marks omitted). Although Rule 37(b)(2)(C) specifically authorizes the court to order "the attorney advising [the] party" to pay "reasonable expenses, including attorney's fees," a number of circuits, including the Fifth, have concluded that monetary sanctions must be tailored to a party's ability to pay. See Thomas v. Capital Sec. Servs., Inc., 836 F.2d 866, 881 (5th Cir. 1988) (en banc) (noting, in the Rule 11 context, that the "resources of the party to be sanctioned" are "relevant" to the sanction imposed); see also Martin v. Automobili Exclusive, Inc., 307 F.3d 1332, 1337 (11th Cir. 2002) ("We conclude that, when exercising its discretion to sanction under its inherent power, a court must take into consideration the financial circumstances of the party being sanctioned."); Johnson v. A.W. Chesterton Co., 18 F.3d 1362, 1366 (7th Cir. 1994) ("One equitable consideration is the ability of the sanctioned attorney (or party) to pay an award of the other party's attorney's fees." (addressing Rule 11)); Oliveri v. Thompson, 803 F.2d 1265 (2d Cir. 1986) ("[G]iven the underlying purpose of sanctions—to punish deviations from proper standards of conduct with a view toward encouraging future compliance and deterring further violations—it lies well within the district court's discretion to temper the amount to be awarded . . . by a balancing consideration of his ability to pay."); cf. Arnold v. Burger King Corp., 719 F.2d 63, 68 (4th Cir. 1983) ("The policy of deterring frivolous suits is not

served by forcing the misguided Title VII plaintiff into financial ruin simply because he prosecuted a groundless case."). Although these courts did not specifically address sanctions in the Rule 37 context, we find their guidance applicable here. In Waggett's case, even an award of $121,107.38 is four times his reported net income for the 2006 fiscal year. We conclude that the district court erred in failing to consider that Waggett lacked the ability to pay. Therefore, we find an abuse of discretion, and reverse the award of joint and several liability as against Waggett.[9]

C.

The next point we address is the district court's action under Fed. R. Civ. P. 37(b)(2)(A)(iii) and (v) striking ClearValue and Haase's pleadings, dismissing their affirmative claims, and entering judgment in favor of Appellees on their invalidity counterclaims. As previously noted, the Fifth Circuit considers four factors in determining whether dismissal is appropriate. Dismissal is only appropriate in cases of willfulness and bad faith. Batson, 765 F.2d at 511. Further, the court must find that the deterrent value of Rule 37 could not be achieved through the imposition of lesser sanctions. Marshall v. Segona, 621 F.2d 763, 768 (5th Cir. 1980). In addition, the non-sanctioned party's trial preparation also must be substantially prejudiced by the violation. Id. Finally, dismissal may be inappropriate when neglect is attributable to the attorney rather than the client, or when a party honestly misunderstood the court's instructions. Id.

---

[9] Needless to say, although we relieve Waggett of financial liability for the monetary sanction, we in no way condone his discovery misconduct.

After arguing that they did not act in bad faith, Appellants contend that the failure to disclose the Lark and Texas Oil test results was harmless and could not have prejudiced Appellees. Appellants suggest the results would not have been useful at the Markman hearing, as they constituted extrinsic evidence and thus would have had only minimal value at the claim construction stage of the case. See Phillips v. AWH Corp., 415 F.3d 1303, 1317–18 (Fed. Cir. 2005) (en banc) ("[W]e have explained [extrinsic evidence] is less significant than the intrinsic record in determining the legally operative meaning of claim language." (internal citations and quotation marks omitted)). Appellants additionally contend that the test results would not have affected the summary judgment stage of the case, as some of Pearl River's documentation indicated the accused products had a molecular weight of over one million, thereby creating an issue of material fact as to infringement. Therefore, Appellants urge, the "only" prejudice that could have occurred was at the infringement stage, and that any prejudice could have been eliminated by granting a continuance to allow Appellees to modify their trial strategy. Addressing the potential deterrent value of lesser sanctions, Appellants contend that the Fifth Circuit has found lesser sanctions appropriate in more egregious cases. By analogy, Appellants argue the dismissal sanction was inappropriate here.

Addressing the dismissal sanction, Appellees largely track the district court's analysis of the Batson factors, arguing that the severity of the sanctions was warranted given the nature of the conduct. Appellees reiterate that the district court found Appellants' explanations implausible, supporting a finding of bad faith. Further, Appellees argue they were severely prejudiced throughout the litigation because

possession of the Lark and Texas Oil test results could have greatly changed trial strategy or led to a settlement (and thus a potential reduction in attorney's fees). Finally, Appellees argue that lesser sanctions would not appropriately deter or punish because "there was not credible evidence [Appellants] misunderstood the rules or the discovery order," the tests affected all stages of litigation, and lesser sanctions "would only encourage litigants to take their chances and conceal damaging, discoverable evidence." Appellees' Br. 49–50.

As noted, Rule 37 provides that a court may strike pleadings and dismiss an action in whole or in part for discovery violations. Fed. R. Civ. P. 37(b)(2)(A)(iii), (v). The Fifth Circuit, however, has characterized dismissal as a "remedy of last resort" and a "draconian" measure, noting dismissal has due process implications. Batson, 765 F.2d at 515. The Fifth Circuit has held that the district court must impose the least severe sanction that will achieve the deterrent value of Fed. R. Civ. P. 37. Id. at 514. In Gonzalez v. Trinity Marine Group, Inc., 117 F.3d 894 (5th Cir. 1994), the court reversed the imposition of a dismissal sanction. The plaintiff in the suit, Jose Gonzalez, brought Louisiana state-law discrimination claims against Trinity Marine, alleging that the company had classified him as an "independent contractor" instead of an "employee" because he was Hispanic. Id. at 895–96. When Trinity offered to discuss the suit, Gonzalez taped the conversations without Trinity's knowledge. Id. After the suit was commenced and Trinity filed two motions to compel production of the tape, Gonzalez produced a copy. Id. An analysis of the tape, however, revealed that Gonzalez had altered the recording before turning it over to Trinity. Id. at 896. The district court granted a third motion to compel, after which Gonzalez produced the "original copy" of

the tape.  Id.  Trinity's expert's analysis indicated that the second tape also was altered. The district court thereupon dismissed Gonzalez's claims with prejudice.  On appeal, however, the Fifth Circuit reversed.  The court determined that "[i]n this matter . . . the district court . . . had available a wide selection of sanctions.  Many of the available possible sanctions would have had same or similar practical effect as to plaintiff's egregious actions and result as the dismissal."  Id. at 899.  The court remanded the case to the district court "for selection of an appropriate sanction which fully addresses Plaintiff's egregious behavior, but falls short of the ultimate dismissal of Plaintiff's entire claim with prejudice."  Id.

Similarly, in Pressey v. Patterson, 898 F.2d 1018 (5th Cir. 1990), the Fifth Circuit held that the district court had abused its discretion in striking the defendants' answer and entering default judgment for the plaintiff.  William Pressey was shot in the head by a Houston, Texas police officer when he drove through the scene of a traffic accident. Id. at 1019–20.  Pressey sued the City of Houston and the two officers supervising the scene (including the shooter), alleging violations of 42 U.S.C. § 1983 and state law.  In due course, Pressey discovered that the Houston Police Department had destroyed relevant interview tapes.  Further, the City inaccurately told the district court the tapes had been erased "through routine reuse."  Id. at 1020.  Additionally, the City had engaged in, and been sanctioned for, several other discovery violations, including a delay in producing relevant psychological records, and the failure to produce a taped interview with the Chief of Police.  Id. at 1023.  Although the appellate court found "some sanction is certainly justified," it concluded that "[t]he incidents of discovery misconduct, taken separately or together, do not support the conclusion that the City

was in bad faith or that it willfully abused the judicial machinery." Id. at 1023–24. Therefore, the court held that the district court had abused its discretion, and reversed the dismissal sanction. Remanding the case, the court stated that "the trial court may consider other, more appropriate sanctions." Id. at 1024.

We reject at the outset Appellants' argument that they did not act in bad faith. The district court's finding of sanctionable conduct, which we have affirmed, was on an evidentiary record which fully supported the court's conclusion that Haase and Waggett acted willfully and in disregard of Rule 26 and the court's discovery order. At the same time, we are not unmindful of the prejudice that Appellees suffered as a result of Haase and Waggett's conduct. We hold, however, that the court abused its discretion in striking ClearValue and Haase's pleadings and entering judgment for Appellees on ClearValue and Haase's patent infringement and trade secret claims and Appellees' counterclaims of patent invalidity. The discovery violation in this case was sanctionable, and we have upheld the district court's imposition of a monetary sanction under Fed. R. Civ. P. 37. However, ClearValue, Haase, and Waggett's discovery misconduct, while sanctionable, was certainly less egregious than the discovery violations in Gonzalez and Pressey, which the Fifth Circuit concluded did not warrant the sanction of dismissal. We therefore reverse the district court's order striking ClearValue and Haase's pleadings, as well as the entry of judgment in favor of Appellees on ClearValue's and Haase's affirmative claims and Appellees' counterclaims of patent invalidity.

III.

As noted above, the district court also relied on its inherent powers in striking ClearValue's and Haase's pleadings, in entering judgment against ClearValue and

Haase on their affirmative claims, in entering judgment in favor of Appellees on their invalidity counterclaims, and in awarding Pearl River $306,863.87 in attorney's fees and $613,410.73 in costs and expenses. We review the district court's use of its inherent power to impose sanctions under the abuse of discretion standard. Chambers v. NASCO, Inc., 501 U.S. 32, 54–55 (1991). On appeal, Appellants argue that a district court should only resort to its inherent power when "an applicable rule or statute cannot fulfill the purpose of the sanctioning authority." Appellants' Br., ClearValue and Haase, 55. Appellants urge that this case solely presents a discovery violation and nothing more, and that because Rule 37 "squarely addresses" the appropriate sanctions for discovery violations, there was no need to resort to inherent powers to impose sanctions upon them.

Appellees respond that a court may resort to the action taken in this case if there is "bad faith or willful abuse of the judicial process," and that sanctions are appropriate when "neither [a] statute nor the rules are up to the task." Appellees contend that the Appellants willfully abused the judicial process through a course of implausible explanations and lack of candor before the court. Appellees argue that the district court was not merely sanctioning the discovery violation, but the "serious misrepresentations [made] to the court." Gonzalez, 117 F.3d at 898. As Fed. R. Civ. P. 37 only addresses discovery violations, Appellees conclude it was appropriate for the district court to look outside of the Federal Rules to sanction other litigation misconduct.

We agree with Appellants. First, we note that "the threshold for the use of inherent power sanctions is high," Elliott v. Tilton, 64 F.3d 213, 217 (5th Cir. 1995), and thus, "our review is not perfunctory," Crowe v. Smith, 151 F.3d 217, 226 (5th Cir. 1998).

As the Supreme Court has cautioned, the inherent power "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function." Chambers, 501 U.S. at 42.

Appellees attempt to recharacterize the sanctioned conduct from a discovery violation into a pattern of willful deception perpetrated on the district court throughout the litigation. We believe this reads too much into the district court's decision. The court limited its sanctions ruling to a finding of "willful, bad faith discovery abuse," indicating that what was involved was a "discovery violation" which began over eighteen months before the sanctions hearing. Sanctions Decision, 242 F.R.D. at 365, 367. Thus, the court framed its sanctions discussion with the applicable discovery law. Id. at 372–73. Further, the court concluded that Appellants engaged in sanctionable misconduct by "violat[ing] Rule 26 and [the district] Court's Discovery Order." Id. at 378.

Discovery violations are appropriately addressed through the application of Rule 37. As articulated in Chambers, "when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." 501 U.S. at 50. A district court should only use its inherent powers when "neither the statute nor the Rules are up to the task." Id. In this case, the court did not indicate it was sanctioning broad litigation conduct of the parties. Rather, it specified it was sanctioning a discovery violation, properly addressed under Rule 37. We thus hold that the district court abused its

discretion by using its inherent powers to impose sanctions against Appellants.[10] We therefore reverse this additional imposition of sanctions.

IV.

Because we reverse the non-monetary sanctions imposed on Appellants, we need not discuss at length the district court's award of $1,628,639.05 in attorney's fees under 35 U.S.C. § 285 and its award of $47,677.30 in costs under 28 U.S.C. § 1920. That is because both § 285 and § 1920 have a "prevailing party" requirement. Section 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." At the same time, Fed. R. Civ. P. 54 states that "costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1) (emphasis added). In turn, 28 U.S.C. § 1920 provides a list of items "any court of the United States may tax as costs," and which may be awarded as such to a "prevailing party" under Rule 54. Appellees are no longer a prevailing party, the reason being that we have reversed the district court's striking of ClearValue and Haase's pleadings and its entries of judgment in favor of Appellees' on ClearValue and Haase's patent infringement and trade secret claims and Appellees' invalidity counterclaims. In short, all original claims have been reinstated. Accordingly, we reverse the court's award of attorney's fees under 35 U.S.C. § 285 and its award of costs under 28 U.S.C. § 1920.

---

[10]    In any event, even were we to agree with Appellees that the district court properly resorted to its inherent powers, for the reasons stated in Part II.C. above, we would reverse the order striking ClearValue and Haase's pleadings and the entry of judgment in favor of Appellees on ClearValue and Haase's affirmative claims and Appellees' counterclaims of patent invalidity.

V.

In sum, for the reasons set forth above we

1.  Affirm the district court's finding of sanctionable conduct;

2.  Affirm the award of $121,107.38 in attorney's fees under Fed. R. Civ. P. 26 and 37 as to ClearValue and Haase, but reverse as to Waggett;

3.  Reverse (1) the court's order striking ClearValue and Haase's pleadings under Rule 37 and the court's inherent powers, and (2) the resulting entries of judgment in favor of Appellees on ClearValue and Haase's claims and Appellees' counterclaims;

4.  Reverse the award of attorney's fees and costs under the court's inherent powers;

5.  Reverse the award of attorney's fees under 35 U.S.C. § 285; and

6.  Reverse the award of costs under 28 U.S.C. § 1920.

The case is remanded to the district court for adjudication of ClearValue and Haase's claims and Appellees' counterclaims. In view of the monetary sanction imposed by the district court under Fed. R. Civ. P. 37, which we have affirmed, the district court should not consider any further sanctions for the discovery violations which are the subject of this appeal.[11] Of course, if circumstances warrant, upon completion of the case, the district court may consider the imposition of sanctions for any further misconduct which may occur.

---

[11]     We believe that the monetary sanction imposed against ClearValue and Haase constitutes an "appropriate sanction" under Gonzalez and Pressey.

## CONCLUSION

The decision of the district court is affirmed-in-part, reversed-in-part, and remanded.

## AFFIRMED-IN-PART, REVERSED-IN-PART, and REMANDED

## COSTS

Each party will bear its own costs.

# United States Court of Appeals for the Federal Circuit

2007-1487, 2008-1176

CLEARVALUE, INC.
and RICHARD ALAN HAASE,

Plaintiffs-Appellants,

and

GORDON WAGGETT,

Sanctioned Party-Appellant,

v.

PEARL RIVER POLYMERS, INC., POLYCHEMIE, INC.,
SNF, INC., POLYDYNE, INC., and SNF HOLDING COMPANY,

Defendants-Appellees.

Appeal from the United States District Court for the Eastern District of Texas in case no. 6:06-CV-197, Judge Leonard Davis.

NEWMAN, <u>Circuit Judge</u>, concurring-in-part, dissenting-in-part.

I join the court's opinion except for Part II(B), wherein my colleagues hold that the district court "abused its discretion in failing to consider [Waggett's] ability to pay when fashioning the sanction against him," and ruling that Waggett shall have no financial consequence of the discovery misconduct for which he was responsible.

The district court held a special hearing, received testimony from all the participants, and decided that liability should be "joint and several" against the company, its chief executive officer Haase, and their lawyer Waggett. The decision not to disclose negative

information of which the lawyer was in possession, and of whose adverse implications the lawyer was fully aware, was the lawyer's responsibility. It is not denied that the withheld molecular weight measurements showed that the products tested had only half of the minimum molecular weight required by the patent claims. Although Mr. Waggett told the district court that he mistakenly thought the test results were privileged, they were not included in the privilege log; that log was the lawyer's responsibility.

My colleagues do not attribute their exoneration of Mr. Waggett to a benevolent toleration of human error; they attribute it to his inability to pay. Although ability to pay is a factor that a court can consider, we have been presented with no argument that Waggett cannot pay any share of the greatly reduced award on this appeal. The plea of hardship was raised in the context of the district court's award of $2,717,098. We have reduced the total award to $121,107, which is less than one twentieth of the amount on which this appeal was taken. Nor do we know how the three sanctioned entities might allocate the burden among themselves, for they surely have a fuller knowledge than we as to both culpability and resources.

We have been shown no abuse of the district court's discretion in the imposition of joint and several liability. Thus I must, respectfully, dissent from the panel's exoneration of the attorney from the monetary consequences of his admittedly improper actions. At least, the matter should be remanded to the district court to consider Mr. Waggett's asserted inability to pay.