NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

―――――――――

**BENNETT MARINE, INC.,**
*Plaintiff-Cross-Appellant,*

**v.**

**LENCO MARINE, INC., AND
RICHARD DEVITO, JR.,**
*Defendants-Appellants,*

AND

**RINKER BOAT COMPANY, AND KIM SLOCUM,**
*Defendants.*

―――――――――

2012-1336, -1354

―――――――――

Appeals from the United States District Court for the Southern District of Florida in No. 04-CV-60326, Judge Kenneth A. Marra.

―――――――――

Decided: September 19, 2013

―――――――――

JAMES A. GALE, Feldman Gale, P.A., of Miami, Florida, argued for plaintiff-cross appellant. With him on the brief was CHRISTINA DEANGELIS.

KARL T. ONDERSMA, Gardner, Linn, Burkhart & Flory, LLP, of Grand Rapids, Michigan, argued for defendants-appellants. With him on the brief was TERENCE J. LINN. Of counsel on the brief were ERIC C. CHRISTU and DANET RODRIGUEZ FIGG, Shutts & Bowen, LLP, of West Palm Beach, Florida; and BARRY L. HALEY, Malin, Haley Di-Maggio, Bowen & Lhota P.A., of Ft. Lauderdale, Florida.

---

Before LOURIE, SCHALL, and PROST, *Circuit Judges.*

SCHALL, *Circuit Judge.*

Defendants-Appellants Lenco Marine, Inc. and its president Richard DeVito, Jr. (collectively "Lenco") appeal from a final judgment of the United States District Court for the Southern District of Florida holding (1) that various products sold by Lenco infringed a patent owned by Plaintiff-Cross Appellant Bennett Marine, Inc. ("Bennett"); (2) that Lenco induced infringement of, and willfully infringed, Bennett's patent; (3) that the asserted claims are not invalid based on prior art; and (4) that Lenco breached a settlement agreement. *See Bennett Marine, Inc. v. Lenco Marine, Inc.*, No. 04-CV-60326 (S.D. Fla. Sept. 29, 2011) ("*Final Decision*"). Based on its patent infringement ruling, the district court awarded damages. *Bennett Marine, Inc. v. Lenco Marine, Inc.*, No. 04-CV-60326 (S.D. Fla. Mar. 2, 2012) ("*Final Judgment*").

For the reasons set forth below, we (1) *reverse* the judgments of infringement, induced infringement, and willful infringement; (2) *affirm* the judgment of no invalidity; (3) *reverse* the judgment of breach of contract; and (4) *vacate* the award of damages.

BACKGROUND

I. Bennett and the '780 Patent

Bennett designs, manufactures, and sells trim tab systems for use on powerboats. Trim tabs are large plates connected to actuators at the stern of a boat that, when extended into the water, adjust the orientation of the boat for more efficient cruising. Bennett owns the patent at issue, U.S. Patent No. 5,113,780 (the "'780 patent"), which discloses a trim tab control system that automatically returns the trim tabs to a fully retracted position (i.e., out of the water) upon removal of power to the boat engine. By automatically retracting the trim tabs, the system leaves the tabs in a known position for the boat's next use and decreases the risk of damage to various system components. '780 patent col. 1 ll. 27–36.

Figure 1 from the '780 patent, reproduced below, shows an embodiment of the invention with a pair of hydraulic actuators 24, 26 connected to a pair of trim tabs 12, 14, which are mounted to the stern 20 of a boat hull 22 via a pair of hinges 16, 18. *Id.*, col. 2 ll. 34–40.



FIG.1

Based on the flow of hydraulic fluid from a pair of control valves 32, 34 and a fluid pump 28, the hydraulic actuators extend or retract to adjust the position of the trim tabs relative to the hull. *Id.*, col. 2 ll. 40–44. Using a switch 40, an operator can selectively adjust the position of the trim tabs to control the pitch of the boat. *Id.*, col. 2 ll. 47–51. The '780 patent discloses: "It will be appreciated, of course, that the principles of the invention apply to electrical and pneumatic actuators of trim tabs, in addition to the preferred hydraulic implementation." *Id.*, col. 3 ll. 53–56.

In addition, the '780 patent discloses a control circuit 42, which causes the actuators (and thus the connected trim tabs) to automatically retract upon removal of power to the engine ignition control 37, via switch 36. *Id.*, col. 2 ll. 55–59. Figure 1 depicts the control circuit as a block labeled "Automatic Tab Retractor." Figure 2, reproduced below, shows a particular embodiment of control circuit 42, in the form of a schematic diagram:



FIG.2

In the '780 patent, the applicants describe in detail the various components comprising the particular embodiment shown in Figure 2. *See* '780 patent col. 2 l. 59 – col. 3 l. 47.

During prosecution, certain claims were rejected as anticipated by U.S. Patent No. 4,762,079 to Takeuchi ("Takeuchi"). To overcome the rejection, the applicants amended the claims and asserted that Takeuchi does not disclose all the recited limitations.

## II. Lenco and the Accused Products

Lenco designs, manufactures, and sells trim tab systems, known generally as automatic tab retractors ("ATRs"), in direct competition with Bennett. Rinker Boat Company ("Rinker"), a defendant in the district court but not involved in this appeal, manufactures and sells powerboats, some of which include ATRs made by Lenco.

At issue in this appeal are two versions of Lenco's ATRs: an initial version (the "Original ATR") with a control wire connecting the control circuit to an engine ignition switch; and a redesigned version (the "Redesigned ATR") with a control wire connecting the control circuit to the boat's engine speed sensor (known as a tachometer). In the Original ATR, trim tab retraction occurs when power is removed from the control wire. In the Redesigned ATR, trim tab retraction occurs after the engine speed drops below a preset level. Both the Original and Redesigned ATRs use electrical screw-driven actuators rather than the hydraulic actuators shown in Figure 1 of the '780 patent.

## III. Prior Dealings Between the Parties

Lenco began marketing the Original ATR in 2001, including with each system instructions to connect the control wire to the boat's engine ignition switch. Bennett sent a cease and desist letter to Lenco in November of 2001, notifying Lenco of the '780 patent. Counsel for

Lenco responded on April 5, 2002, asserting noninfringement but also proposing settlement. On February 25, 2003, Bennett and Lenco entered into a settlement agreement (the "Settlement Agreement"). In the Settlement Agreement, Lenco agreed to pay $70.00 per unit for 371 Original ATRs previously sold with the original wiring instructions. After entering into the Agreement, Lenco sent out revised instructions notifying its customers to stop connecting the control wire of its ATRs to the engine ignition switch and to instead connect the control wire (labeled "orange") to an "on/off switch," also characterized as a "non-engine switch."[1] Appendix B to the Settlement Agreement generally reflects the revised instructions.

## IV. The District Court Proceedings

Bennett filed its initial complaint on March 16, 2004. After a two-week bench trial in January and February of 2009, the district court issued its findings of fact and conclusions of law on September 29, 2011. The court found that, in 2006, Lenco began selling the Redesigned ATR. *Final Decision* at 11–12, ¶ 50. The court found that Lenco redesigned its ATRs in an effort to avoid infringement of the '780 patent. *Id.* In addition, the court found that, long after signing the Settlement Agreement, Lenco was aware that Rinker was selling boats with Lenco's ATRs wired directly to the engine ignition switch. *Id.* at 12, ¶ 51. The court also found that, since April of 2007, Rinker has been wiring Lenco's ATRs to the tachometer, not directly to the engine ignition switch. *Id.* at 15, ¶ 64.

---

[1]   Like most cars, boats typically have three positions for their ignition switches: off (where both engine and accessories have no power); accessory (where only accessories have power); and on (where both engine and accessories have power).

The district court held that Lenco's ATRs sold by Rinker infringed claims 1 and 9 of the '780 patent (both literally and under the doctrine of equivalents), both when the ATRs were wired directly to an engine ignition switch and also when they were wired to a tachometer. *Id.* at 31–39. In addition, the court held that Lenco willfully infringed the '780 patent and also induced infringement by Rinker. *Id.* at 47–52. Further, the court held that the defendants had not proven that the asserted claims were anticipated or rendered obvious by various prior art references. *Id.* at 39–46.

Based on its patent infringement ruling, the district court determined a royalty rate of $3.00 per unit and awarded Bennett damages of (1) $339,054.00 jointly and severally from Lenco Marine, Inc. and DeVito and (2) $27,680.00 from Rinker. *See Final Judgment* at 1; *see also Final Decision* at 53–54. Notably, the amount from Lenco Marine, Inc. and DeVito included a doubling of damages based on the willfulness ruling. *See Final Decision* at 53. In the process of awarding damages, the district court rejected Bennett's request to modify the royalty rate from $3.00 per unit to $70.00 per unit.

In addition to the patent issues, the district court also addressed claims for breach of contract, holding that Lenco had breached the Settlement Agreement both by "inducing[,] developing[,] and selling an infringing product which was designed to be wired into the tachometer gauge of the boat" as well as by "inducing Rinker and others to infringe the '780 patent." *Id.* at 56, ¶ 134. The district court awarded no additional damages based on the contract breach, however, finding that "the damages for patent infringement previously awarded . . . are the same damages suffered by Bennett for Lenco's breach of the contract." *Id.*, ¶ 135.

Lenco timely appealed various aspects of the district court's judgment, while Bennett timely cross-appealed the

denial of its request to increase the royalty rate.[2]   We have jurisdiction under 28 U.S.C. § 1295(a)(1).

DISCUSSION

I. Standards of Review

Claim construction is a question of law, which we review without deference. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc).  Following a bench trial, we review findings of infringement, both literal and under the doctrine of equivalents, as a factual issue subject to the clearly erroneous standard of review. *Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1125 (Fed. Cir. 1996).

Anticipation is a question of fact, and we review a district court's finding on this issue for clear error. *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1082 (Fed. Cir. 2008).   When considering a district court's ruling on obviousness, we review the underlying factual findings for clear error and review without deference the ultimate legal issue of obviousness. *McNeil-PPC, Inc. v. L. Perrigo Co.*, 337 F.3d 1362, 1368 (Fed. Cir. 2003).

When reviewing issues not unique to patent law, such as interpretation of a settlement agreement, we apply the law of the appropriate regional circuit. *See Novamedix, Ltd. v. NDM Acquisition Corp.*, 166 F.3d 1177, 1180 (Fed. Cir. 1999).  The Eleventh Circuit reviews without deference a court's interpretation of a contract under the applicable state law—here, the law of the state of Flori-

---

[2]   Neither Rinker nor its president Kim Slocum— both defendants in the district court—appeals the district court's judgment.

da.[3] *See Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1065 (11th Cir. 2004).

## II. Claim Construction

### A.

On appeal, the parties dispute various aspects of the district court's constructions of the second, fourth, and fifth limitations of claim 1 of the '780 patent.[4] To resolve this appeal, however, we only need to address the parties' dispute as to the fifth limitation, which recites:

> means coupled to said trimming means and to said engine, and responsive to removal of electrical power from said engine, for automatically moving said trimming means to a predetermined position with respect to said hull upon removal of power at said engine.

'780 patent col. 4 ll. 10–15.[5] The district court construed this limitation as a means-plus-function limitation under

---

[3] The Settlement Agreement states that Florida law governs its interpretations.

[4] Although the underlying litigation also involved claim 9, for purposes of this appeal, claims 1 and 9 rise and fall together.

[5] The entirety of claim 1 recites as follows: A boat trim control system that comprises:

a boat having a hull and an engine for powering said boat;

means for selectively applying electrical power to said engine for powering the boat;

means movably mounted to said hull for trimming attitude of said boat as said hull is propelled through the water;

former 35 U.S.C. § 112, ¶ 6 (now § 112(f)).[6]  In construing such a limitation, a court must first identify the function recited and then identify the corresponding structure in the written description necessary to perform that function.  *See Asyst Techs., Inc. v. Empak, Inc.*, 268 F.3d 1364, 1369–70 (Fed. Cir. 2001).  Here, the district court identified the function as "to provide a means to respond to the stimulus of electrical power being removed from the engine, thus resulting in the trim tabs being automatically returned to the fully retracted position or other predetermined position."  *Final Decision* at 28–29, ¶ 20.  It identified the structure as "control circuit 42, fig. 1, and equivalents thereof." *Id.*

## B.

Challenging the district court's claim construction, Lenco first asserts that the court failed to identify all of the functions required by the fifth limitation.  According to Lenco, the claimed "means" must also physically move the "trimming means" recited in the third limitation, in addition to "provid[ing] a means to respond" to the removal of power.  Second, according to Lenco, the failure to

---

means carried by said hull and responsive to a boat operator for selectively adjusting position of said trimming means to maintain desired attitude under varying conditions, and

means coupled to said trimming means and to said engine, and responsive to removal of electrical power from said engine, for automatically moving said trimming means to a predetermined position with respect to said hull upon removal of power at said engine.

[6]    The parties do not dispute that the fifth limitation should be construed as a means-plus-function limitation.

fully identify the functions required by the fifth limitation led the court to not identify certain corresponding structure. Lenco asserts that the corresponding structure for the additional required function includes structures that are coupled to the trim tabs and engine, are responsive to the removal of engine power, and are necessary to physically move the trim tabs. Finally, with regard to the function identified by the district court, Lenco argues that the court erred by identifying the corresponding structure as the generic control circuit in figure 1. Lenco contends that the court should have limited the corresponding structure to the specific circuit shown in figure 2.

Bennett does not attempt to rebut Lenco's first two arguments. Rather, it maintains that any error on the district court's part was harmless because the court included the proposed additional function and structures in its construction of the fourth limitation, which recites a "means carried by said hull and responsive to a boat operator for selectively adjusting position of said trimming means to maintain desired attitude under varying conditions." Bennett focuses on Lenco's final argument, which addresses the corresponding structure of the control circuit. According to Bennett, the general disclosure in figure 1 sufficiently identifies the corresponding structure because "[t]he control circuit shown in the preferred embodiment is a common type of electrical circuit that has been in use since the 1970's." Appellee Br. 33–34. In other words, Bennett argues that because the particular circuit shown in figure 2 is allegedly common, the corresponding structure should not be limited to that particular circuit, but should also include any circuit capable of performing the required function.

C.

We agree with Lenco's first two arguments regarding the fifth limitation. As essentially conceded by Bennett, the district court erred by failing to fully identify the function and corresponding structure required. As stated in the fifth limitation, the recited "means" must "automatically mov[e]" the trim tabs "upon removal of power at said engine." We thus revise the required function as follows: "to respond to the stimulus of electrical power being removed from the engine by automatically returning the trim tabs to the fully retracted position or other predetermined position." *See Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1319 (Fed. Cir. 2003) ("The function of a means-plus-function claim must be construed to include the limitations contained in the claim language."). The corresponding structure is a control circuit (discussed in further detail below) as well as the actuators and related components necessary to automatically retract the trim tabs upon the removal of engine power.[7]

The primary dispute between the parties regarding the fifth limitation relates to the scope of the corresponding structure for the control circuit, namely, whether that structure should be limited to the specific circuit shown in figure 2 or whether the structure should be construed broadly as the generic circuit shown in figure 1, i.e., any circuit fulfilling the required function. Because Lenco's argument accords with our precedent, we limit the control circuit portion of the corresponding structure of the fifth

---

[7] Although the parties dispute whether the corresponding structure for this function can include electrical actuators, for reasons discussed below, we need not address that dispute to resolve this appeal.

limitation to the specific circuit shown in figure 2 and its equivalents.

The '780 patent discloses only one specific type of circuit to perform part of the function required by the fifth limitation. In such a situation, the corresponding structure should be limited to that specific structure and its equivalents, rather than *any* circuit capable of performing the required function. *See Mettler-Toledo, Inc. v. B-Tek Scales, LLC*, 671 F.3d 1291, 1295–96 (Fed. Cir. 2012) (affirming a construction limiting a means-plus-function limitation to the specific disclosed analog-to-digital converter, despite the presence of a generic "analog-to-digital converter" in a patent figure, because "[i]f a patentee chooses to disclose a single embodiment, then any means-plus-function claim limitation will be limited to the single disclosed structure and equivalents thereof"); *see also J&M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360, 1367 (Fed. Cir. 2001) ("The literal scope of a properly construed means-plus-function limitation does not extend to all means for performing a certain function. Rather, the scope of such claim language is sharply limited to the structure disclosed in the specification and its equivalents.").

The decisions relied on by Bennett do not support the proposition that the inventors disclosed any more than the specific circuit shown in figure 2. In contrast to the facts in *Serrano v. Telular Corp.*, 111 F.3d 1578, 1583 (Fed. Cir. 1997), the '780 patent does not disclose alternatives to the circuit shown in figure 2, such as, for example, a general class of known switches. Instead, the '780 patent only discloses one embodiment, that shown in figure 2. *See* '780 patent col. 2 l. 55 – col. 3. l. 47. In addition, *S3 Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1370–71 (Fed. Cir. 2001), and *Intel Corp. v. Via Technologies, Inc.*, 319 F.3d 1357, 1366–67 (Fed. Cir. 2003), do not support Bennett's position on this issue. Rather, they teach that a patent is not rendered indefinite for failure to fully dis-

close teachings well known in the art. Although the evidence relied on by Bennett does show that the specific circuit shown in figure 2 was known at the time of filing, this does not support Bennett's conclusion that "*numerous types* of control circuits were well-known in the art when the '780 patent was filed." *See* Appellee Br. 34 (emphasis added). Bennett has not identified any evidence showing that any circuit other than the circuit disclosed in figure 2 was known and capable of performing the function required by the fifth limitation.

For these reasons, the district court erred in its construction of the fifth limitation of claim 1 and the related sixth limitation of claim 9.

## III. Infringement

### A.

We turn now to the district court's findings regarding infringement. Based on our revised construction for the fifth limitation of claim 1 of the '780 patent and the related sixth limitation of claim 9, we reverse the finding of infringement.

In the *Final Decision*, the district court rejected Lenco's argument that its ATRs did not literally infringe claim 1 because they did not include the specific circuit shown in figure 2. *Final Decision* at 33, ¶ 35. The court made similar findings regarding literal infringement of claim 9. *Id*. at 36–37. Further, the court found infringement under the doctrine of equivalents after finding that the "Lenco control circuit is interchangeable with the control circuit 42 of the '780 patent." *Id*. at 37–39.

For there to be literal infringement of a claim reciting a means-plus-function limitation, the accused device must perform the identical function recited in the claim, and must use the same structure disclosed in the specification or equivalent structure. *See IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1430 (Fed. Cir. 2000).

"Structural equivalence under § 112, ¶ 6 is met only if the differences are insubstantial . . . that is, if the assertedly equivalent structure performs the claimed function in substantially the same way to achieve substantially the same result as the corresponding structure described in the specification." *See Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999). To find infringement of a claim reciting a means-plus-function limitation under the doctrine of equivalents using the traditional function-way-result test, "the accused structure must perform substantially the same function, in substantially the same way, to achieve substantially the same result, as the disclosed structure." *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1364 (Fed. Cir. 2000).

## B.

As to literal infringement, Lenco argues that the specific circuits present in both the Original and Redesigned ATRs are not disclosed in the '780 patent. Lenco also argues that those circuits are not structural equivalents to the circuit shown in figure 2 because that circuit operates in a different way. Specifically, Lenco asserts that the circuit in figure 2 operates as a timing circuit (i.e., it operates for a preset amount of time to retract the trim tabs regardless of their position), while Lenco's circuit counts the rotations of the electrical actuator and ceases retraction when the actuator has reached the end of its travel. As to infringement under the doctrine of equivalents, Lenco asserts that the district court erred in finding that the circuits in the Original and Redesigned ATRs satisfy the fifth limitation of claim 1 based on a finding that Lenco's circuits and control circuit 42 are "interchangeable." Lenco argues that the circuits in the Original and Redesigned ATRs do not satisfy the fifth limitation of claim 1 under the doctrine of equivalents because they operate in a different way.

In response, Bennett argues that the district court properly found literal infringement because figure 2 is only a preferred embodiment and thus the asserted claims do not require the specific components of figure 2. In addition, Bennett argues that the district court properly found infringement under the doctrine of equivalents because it was "comparing the same structures, namely Control Circuit 42 as shown in Figure 1 of the '780 Patent to Lenco's control circuit." Appellee Br. 46. According to Bennett, because these structure were the same, they were also interchangeable.

C.

Significantly, Bennett does not assert that the circuits in Lenco's Original or Redesigned ATRs literally satisfy the narrower construction of the fifth limitation of claim 1, as set forth above, as either the disclosed structure or equivalent structure. Instead, Bennett argues why, in its view, the narrower construction is incorrect. Bennett does not address Lenco's arguments regarding infringement under the narrower construction, including Lenco's arguments that its control circuits operate in a different "way" and are therefore not structural equivalents to the circuit shown in figure 2 of the '780 patent. We conclude that, despite being fully aware of Lenco's proposed revised claim construction, Bennett failed to demonstrate that the evidence supports the district court's finding of literal infringement under the narrower proposed construction of the fifth limitation of claim 1, adopted above. Accordingly, we reverse the finding of literal infringement because Bennett has not shown that Lenco's ATRs include the specific circuit shown in figure 2 of the '780 patent or its structural equivalent.

We also reverse the district court's finding of infringement under the doctrine of equivalents. The testimony relied on by the district court to find the circuits in Lenco's ATRs interchangeable only establishes that pulse

input systems, such as those present in Lenco's ATRs (1) existed at the time of the filing of the '780 patent and (2) could potentially perform the function required by the fifth limitation of claim 1. *See Final Decision* at 38–39. This, however, is insufficient to demonstrate an accused structure is equivalent. *See Chiuminatta Concrete Concepts v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1309 (Fed. Cir. 1998) (noting in a discussion of structural equivalents that "[t]he question of known interchangeability is not whether both structures serve the same function, but whether it was known that one structure was an equivalent of another"); *see also id.* at 1310 ("[A] finding of a lack of literal infringement for lack of equivalent structure under a means-plus-function limitation may preclude a finding of equivalence under the doctrine of equivalents."). On appeal, Bennett has failed to demonstrate how the evidence supports a finding of infringement under the doctrine of equivalents when analyzed under the proper construction of the fifth limitation of claim 1 (or the sixth limitation of claim 9). For this reason, we reverse the finding of infringement under the doctrine of equivalents.

We turn briefly to the district court's conclusions as to induced infringement and willful infringement. Because a judgment of induced infringement requires an act of direct infringement, *see Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1277 (Fed. Cir. 2004), based on our reversal of the infringement judgment, we reverse as to induced infringement. Similarly, reversing the district court's judgment of infringement requires us to reverse the judgment of willful infringement. *See Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1055 (Fed. Cir. 2002) (en banc). Based on our reversal as to infringement, we vacate the award of damages and thus need not address the aspects of Bennett's cross-appeal relating to the proper royalty rate for patent infringement damages.

IV. Invalidity

A.

The district court held that the asserted claims were neither anticipated nor rendered obvious because "none of the prior art introduced by Defendants at trial, alone or in combination, disclose automatic trim tabs that retract upon removal of power from an engine." *Final Decision* at 42, ¶ 73. Specifically, the court found that U.S. Patent No. 4,872,857 to Newman ("Newman") does not anticipate the asserted claims of the '780 patent because (1) it does not disclose trim tabs and (2) it does not disclose automatic retraction of trim tabs upon removal of power from the engine. *Id.* at 43, ¶ 76. The court found that Newman discloses a system that can, in response to a user's selection, return an outboard motor to various predetermined positions, including a "trailering" position used to avoid contact between the motor and a boat trailer. *Id.* at 20–21. In addition, the court found that, although Newman did disclose "cavitation plates," trim tabs and cavitation plates are not synonymous.[8] *Id.* at 21, ¶ 91. Regarding obviousness, the district court held that none of the references identified by Lenco, alone or in combination, disclose a system that causes trim tabs to automatically retract upon removal of power to a boat engine. *Id.* at 45, ¶ 86.

B.

On appeal, Lenco argues that the court erred in finding the asserted claims not invalid. As to anticipation,

---

[8]    According to Bennett's expert, cited by the district court, *Final Decision* at 21, a cavitation plate, located between the top of a propeller and the surface of the water, prevents cavitation by limiting the amount of air pulled in by a propeller.

Lenco admits that Newman does not disclose "traditional 'trim tabs,'" but instead argues that, based on the prosecution history of the '780 patent, Bennett should be estopped from arguing that Newman does not disclose the trim tabs required by the third limitation of claim 1 (and the second limitation of claim 9). Lenco notes that, during prosecution, the examiner cited Takeuchi as anticipating claims 1 and 9 even though that reference, like Newman, discloses a system with an outboard motor but no trim tabs. From this, Lenco concludes that the examiner "implicitly found [Takeuchi] to satisfy the trimming limitations." Appellant Br. 63. Lenco argues that because the inventors did not overcome that rejection by arguing that Takeuchi failed to disclose trim tabs (but instead overcame the rejection on other grounds), Bennett should be estopped from now arguing that Newman does not disclose trim tabs. Lenco also cites testimony stating that trim tabs and cavitation plates perform similar functions.

Further, Lenco argues that its expert's testimony supports a finding of obviousness. Specifically, Lenco asserts that its expert testified that it would have been obvious to combine the teachings of Newman with various patents, including U.S. Patent Nos. 3,695,204 and 3,468,278—which disclose manual control systems for boat trim tabs—to arrive at the claimed invention.

Regarding anticipation, Bennett responds that Newman does not disclose trim tabs and cites the district court's finding that cavitation plates and trim tabs are not synonymous. Bennett also argues that Lenco inaccurately described the system disclosed in Newman. As to obviousness, Bennett argues that Lenco failed to demonstrate obviousness by clear and convincing evidence because Lenco's expert was not actually one of ordinary skill in the relevant art.

C.

Regarding anticipation, the district court properly concluded that Newman does not anticipate the asserted claims, at least because that reference does not disclose a system involving trim tabs, as required by the third limitation of claim 1 and the second limitation of claim 9.[9] Lenco did not appeal the court's construction of those limitations. Further, even if cavitation plates and trim tabs do perform the same function required by the third limitation of claim 1, Lenco has not demonstrated or argued that cavitation plates are corresponding structure or constitute a structural equivalent. For these reasons, we see no error in the court's finding that Newman does not disclose trim tabs and structural equivalents thereof. *See Final Decision* at 21.

We are not persuaded by Lenco's estoppel argument, which lacks any citation to case law. We know of no decision supporting the proposition that the failure of an inventor to distinguish a certain prior art reference on a specific ground creates an estoppel with respect to an arguably similar aspect of a *different* reference. As applied here, the fact that the inventors distinguished Takeuchi on alternative grounds (other than the potential argument that Takeuchi does not disclose trim tabs) does not mean that the inventors waived an argument distinguishing Newman for a failure to disclose trim tabs.

Regarding obviousness, we conclude that the district court did not err in finding that Lenco failed to carry its burden of showing the obviousness of the asserted claims

---

[9]    The district court construed the third limitation of claim 1 as a means-plus-function limitation requiring a structure of "a trim tab or trim tabs and equivalents thereof." The second limitation of claim 9 recites: "at least one trim tab pivotally mounted to said hull at said stern."

by clear and convincing evidence.  Specifically, Lenco has failed to show that the prior art, alone or in combination, discloses the trim tabs required by the third limitation of claim 1 and the second limitation of claim 9.  While the expert testimony arguably demonstrates the presence of the various components of the claimed system in the prior art, that, alone, does not demonstrate the obviousness of the claimed invention.  *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007) ("[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art.")*; see also Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1351–52 (Fed. Cir. 2010) (affirming the nonobviousness of the asserted claims when the accused infringer's expert "did not provide a plausible rationale as to why the prior art references would have worked together to render the claims . . . obvious").

For these reasons, we affirm the district court's conclusion that Lenco failed to prove the invalidity of the asserted claims.

### V. Breach of the Settlement Agreement

#### A.

We now turn to the district court's breach of contract ruling.  The court found that Lenco breached paragraph 10 of the Settlement Agreement, which states:

> Lenco will not advise or counsel any sales representative, builder, dealer, retailer, discounter, mail order or catalog customer, prospective or actual, supplier, distributor, inquirer, prospect[ive] or potential customer, or representative to wire Lenco's retraction device in any manner other than as shown in Appendix B . . . .

J.A. 3051–52; *see Final Decision* at 56.  The district court found that Lenco breached paragraph 10 by (1) "inducing[,] developing[,] and selling an infringing product

which was designed to be wired into the tachometer gauge of the boat" and (2) "inducing Rinker and others to infringe the '780 patent." *Final Decision* at 56, ¶ 134.

### B.

Lenco asserts that Bennett produced no evidence showing that Lenco "advise[d]" or "counsel[ed]" customers to ignore the instructions in Appendix B. In addition, Lenco argues that the court erred by basing its finding of a breach, in part, on Lenco having indemnified various customers.

Bennett responds that the evidence shows that Lenco knowingly and intentionally encouraged its customers to install their ATRs in an infringing way by giving them instructions to do so, honoring warranties on boats with infringing installations, and agreeing to indemnify any infringers.

### C.

Based on the record on appeal, we conclude that the district court erred in finding a breach of the Settlement Agreement. Both the reasoning of the district court and Bennett's arguments on appeal rely solely on the district court's finding of infringement to support the breach of contract ruling. Based on our reversal as to infringement, we therefore also reverse the breach of contract ruling. We need not address the issue of contract damages, as raised in Bennett's cross-appeal.

### CONCLUSION

For the foregoing reasons, we (1) *reverse* the district court's judgments of infringement, induced infringement, and willful infringement; (2) *affirm* the judgment of no invalidity; (3) *reverse* the judgment of breach of contract; and (4) *vacate* the award of damages.

**AFFIRMED-IN-PART, REVERSED-IN-PART, AND VACATED-IN-PART**

## COSTS

Each party shall bear its own costs.